# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| NATANAEL ASCANIO BAYONA, | )<br>) |
|     Petitioner, | )<br>) |
| v. | )<br>)<br>) |
| SCOTT LADWIG, New Orleans Field Office Director of Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY, Enforcement and Removal Operations; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | )<br>)<br>)   No. 2:26-cv-02212-SHL-atc<br>)<br>)<br>)<br>) |
|     Respondents. | )<br>) |

## ORDER GRANTING PETITION

On March 2, 2026, Petitioner Natanael Ascanio Bayona filed the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 1.) Ascanio Bayona challenges his continued detention in the West Tennessee Detention Facility as an "arriving alien" without a bond hearing. (ECF No. 1-3 at PageID 17.) He seeks immediate release from Respondents' custody.[1] (Id.)

On March 2, the Court issued an order requiring Respondents to respond. (ECF No. 6.) Respondents responded four days later. (ECF No. 9.) For the reasons explained below, Ascanio Bayona is entitled to immediate release, and the Petition is **GRANTED**.

---

[1] As in many other petitions she has filed, Ascanio Bayona's counsel has also included a request for attorney's fees and costs under the Equal Access to Justice Act ("EAJA") in her recycled template. (ECF No. 1 at PageID 7.) However, as the Court has reminded counsel, a motion for attorney's fees is due "within 30 days of final judgment." 28 U.S.C. § 2412(d)(1)(B). Under the EAJA, a "final judgment" is a judgment that is final and not appealable; here, that time occurs sixty days after the judgment, as that is the deadline for appeal. Melkonyan v. Sullivan, 501 U.S. 89, 96 (1991). Therefore, a motion for costs and attorney's fees ripens ninety days after judgment here, and should not be considered earlier. See Castaneda-Mondragon v. Acuna, No. 25-cv-03044, ECF No. 15 (W.D. Tenn. filed Jan. 5, 2026). Counsel is cautioned to review her habeas template with a critical eye before her next filing.

## BACKGROUND

Ascanio Bayona, a citizen of Columbia, entered the United States on November 11, 2022, and has been continuously present in the United States since then. (ECF No. 1-3 at PageID 12.) He is married, employed, and awaiting the result of his I-589 asylum application. (Id. at PageID 13.) He has no criminal history. (ECF No. 9-2 at PageID 41.)

On December 17, 2025, Ascanio Bayona was apprehended and taken into ICE custody. (ECF No. 1-3 at PageID 12.) He remains at the West Tennessee Detention Facility in Mason, Tennessee. (ECF No. 1 at PageID 6.) Since his detention, he has twice requested a bond hearing in immigration court. (ECF No. 9 at PageID 28.) Both times, the Immigration Judge ("IJ") denied his request, citing the recent decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025). (ECF No. 9-3 at PageID 42–49.) The present Petition followed, the crux of which argues that Ascanio Bayona was detained without a bond hearing.

Indeed, under recently adopted guidance from DHS and ICE, Ascanio Bayona is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the INA and was allegedly declared ineligible to be released on bond. Until recently, however, most noncitizens in this situation were given bond hearings under a different provision, § 1226(a). See Godinez-Lopez v. Ladwig, No. 25-CV-02962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025). Section 1226(a) allows immigration authorities to release immigrants from detention on a bond of $1,500 or more, unless they require detention for certain reasons. For example, noncitizens with certain criminal records may not be released on bond. 8 U.S.C. § 1226(c).

Section 1225(b)(2)(A), on the other hand, prohibits a bond for all "applicants for admission" who are "seeking admission." "Applicants for admission" has been interpreted to mean recent arrivals, including those who have not been "physically present in the United States

continuously" for the previous two years.  See 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("An alien described in this clause is an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . .").

But, on July 8, 2025, ICE, in coordination with the Department of Justice ("DOJ"), issued a new policy with a novel interpretation of §§ 1225(b)(2)(A) and 1226(a).  Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.").  The policy reclassified all undocumented immigrants, even those who have lived in the United States for years, as "applicants for admission."  And all "applicants for admission" are required to be detained for removal proceedings without a bond hearing under § 1225(b)(2)(A).

Thus, ICE's new legal interpretation makes § 1225(b)(2)(A), not § 1226(a), the statute governing removal proceedings for all immigrants without legal status.  As a result, all undocumented immigrants awaiting removal are detained without a bond hearing.  This new interpretation was later adopted by the Board of Immigration Appeals ("BIA") in a published decision, Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).

Ascanio Bayona faces the risk of continued detention without a bond hearing.  (ECF No. 1 at PageID 6.)  His Petition alleges violations of Fifth Amendment due process, the Fourth Amendment protection against unreasonable seizures, and the Eighth Amendment prohibition on cruel and unusual punishment.  (Id. at PageID 6–7.)  He seeks his immediate release.  (Id.)

In response, Respondents contend that the Fifth Circuit's recent opinion in Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026), provides persuasive authority for denying the petition; that Ascanio Bayona should be treated for due process purposes as if stopped at the border; that no Fourth Amendment right was violated because his detention was reasonable; and that, if the Court finds that § 1226(a) applies to him, he should be granted a bond hearing and not immediately released.  (ECF No. 9 at PageID 28–34.)

## ANALYSIS

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  Lopez-Campos v. Raycraft, No. 25-CV-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)).  Ascanio Bayona challenges his detention without bond as violative of his constitutional rights.  (ECF 1 at PageID 6–7.)  The Court first interprets the statutes to determine whether §1225 or § 1226 is applicable, and then analyzes the due process claim.

I.     **Statutory Interpretation**

"A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void[,] or insignificant."  Corley v. United States, 556 U.S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)).  Each word within a statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'"  Kentucky v. Biden, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing Walters v. Metro. Edu. Enters., Inc., 519 U.S. 202, 207, (1997)).

Custody over noncitizens during removal proceedings is generally governed by two statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of

4

inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and detention of aliens"). Section 1225(b) requires mandatory detention, providing in relevant part:

>   (b)   Inspection of applicants for admission
>   . . .
>   (2)   Inspection of other aliens
>   (A)   In general
>   Subject to subparagraphs (B) and (C), in the case of an alien who is an <u>applicant for admission</u>, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien <u>shall</u> <u>be</u> <u>detained</u> for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is a noncitizen "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). Under this section, all applicants for admission "shall be detained." Id. § 1225(b)(2)(A).

Section 1226(a), on the other hand, allows for discretionary detention, providing in relevant part:

>   (a)   Arrest, detention, and release
>   On a warrant issued by the Attorney General, an alien <u>may</u> <u>be</u> <u>arrested and detained</u> pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>   (1)   <u>may</u> <u>continue</u> <u>to</u> <u>detain</u> the arrested alien; and
>   (2)   <u>may</u> <u>release</u> the alien on—
>   (A)   bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General .
>   . . .

8 U.S.C. § 1226(a) (emphasis added). The exception in § 1226(c) prohibits releasing on bond a noncitizen found to be inadmissible, who <u>also</u>,

>   is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .

5

Id. § 1226(c)(1)(E)(ii).  "Noncitizens arrested and detained under § 1226 have a right to request a custody redetermination (i.e., a bond hearing) before an IJ."  Lopez-Campos, 2025 WL 2496379, at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified).  "The IJ evaluates whether there is a risk of nonappearance or danger to the community."  Id. (citing Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).  Thus, except for those noncitizens with a record of certain criminal offenses, § 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a hearing before an IJ on the issue.[2]

Ascanio Bayona argues that ICE's new interpretation of § 1225(b)(2)(A) violates his rights under the Fourth, Fifth, and Eighth Amendments.  (ECF No. 1 at PageID 6–7.)  He argues that 8 U.S.C. § 1226(a) applies to his detention because he not an "arriving alien."  (ECF No. 1-3 at PageID 17.)  He argues that, because he entered the United States three years ago and was "apprehended in the interior," he is not an "arriving alien" and thus § 1226(a) applies.  (Id. at PageID 15.)  For these reasons, he seeks his immediate release.  (Id. at PageID 17.)

Respondents argue that § 1225(b)(2)(A), not § 1226(a), applies to Ascanio Bayona because he "entered the United States without inspection or parole" and thus remains "an 'applicant for admission' who is treated, for constitutional purposes, as if stopped at the border." (ECF No. 9 at PageID 29.)  As a result, they assert that "he is subject to mandatory detention and not entitled to a bond hearing."  (Id.)  They incorporate by reference their statutory arguments from previous cases such as Godinez-Lopez, 2025 WL 3047889.  (Id. at PageID 30.)

---

[2] See 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . .  After an initial custody determination . . . the respondent may . . . request amelioration of the conditions under which he or she may be released. . . .  [T]he immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .").

The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Respondents' contention that Ascanio Bayona is "seeking admission." Beginning with the titles, the title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The title of § 1226(a) is "Apprehension and detention of aliens." Although titles of statutes are not controlling, they are "tools available for the resolution of a doubt about the meaning of a statute." Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified). Here, § 1225's title describes "arriving aliens" who are placed into "expedited removal" proceedings. But Ascanio Bayona was not "arriving" when he was detained far away from the United States border, after having been in this country for three years. (ECF No. 1-3 at PageID 13.) Also, the record does not show that he was eligible for expedited removal proceedings. Thus, the mandatory detention provision of § 1225 does not apply to him.

Further, the subject matter of § 1225 undercuts Respondents' reading of the statute. Section 1225 describes the process of inspecting and removing immigrants actively crossing the border. See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible."). And Respondents' reading of § 1225(b)(2)(A) ignores several words and phrases within the statute itself. "If possible, every word and every provision is to be given effect." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012). But to apply § 1225(b)(2)(A) to Ascanio Bayona would render the following underlined words superfluous:

> [I]n the case of an alien who is an applicant for admission, if the <u>examining immigration officer</u> determines that an alien <u>seeking</u> admission is <u>not clearly and beyond a doubt entitled to be admitted</u>, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  The record does not show that Ascanio Bayona was seeking admission at the time of his detention, and nor does it show that he had received a determination by an immigration officer that he was "not clearly and beyond a doubt entitled to be admitted."  The language of § 1225(b)(2)(A) makes sense in the context of the border, but not in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for three years.  To interpret "alien seeking admission" using its ordinary meaning but outside the context of the provision, as argued by Respondent, is untenable.

Also, Respondents' interpretation of § 1225(b)(2)(A) would render § 1226(c) superfluous.  That subsection carves out an exception to the general rule that an arrested noncitizen is eligible for a bond.  Under subsection (c), a noncitizen with a certain criminal history must be mandatorily detained.  8 U.S.C. § 1226(c)(1)(E)(ii) ("The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .").  But, under Respondents' reading of § 1225, all arrested noncitizens must be detained without bond.  Thus, § 1226(c) would have no purpose.  Yet, courts must "give effect, if possible, to every clause and word of a statute."  Duncan v. Walker, 533 U.S. 167, 174 (2001).  Ascanio Bayona's reading of the statute is the only one compatible with the presence of § 1226(c).  What is more, Ascanio Bayona has no criminal record in the United States, so this mandatory detention provision cannot conceivably be applied to him.  See § 1226(c)(1)(E)(ii).

The plain language of § 1226(a) describes Ascanio Bayona's situation.  That section applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by

8

the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Ascanio Bayona was charged with being removable and detained in West Tennessee. Thus, the Attorney General has discretion under this section. She "may continue to detain [him]" or she "may release [him] on bond." (Id.) But the Attorney General may not deny him the bond hearing to which he is entitled. See 8 C.F.R. § 1236.1(c)(8), (d)(1).

Not only is the plain language of §§ 1225 and 1226 sufficient to support a finding in Ascanio Bayona's favor, but the Congressional intent behind § 1226(a) is also supportive. In 2025, Congress passed the Laken Riley Act, adding a subsection to § 1226(c) to preclude persons with criminal histories from receiving bond. Pub. L. No. 119-1, 139 Stat. 3 (2025). Congress would not have added exceptions to the broad rule of § 1226(a) if, as Respondents assert, it intended § 1226(a) to give way to § 1225(b)(2)(A) in all cases. See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) ("The fact that Congress has created specific exceptions to [a rule] hardly proves that the [rule] does not apply generally. In fact, it proves the opposite."). On the contrary, Congress's recent attention to § 1226 points to its approval of the interpretation prevailing before July 2025. After all, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless." Lopez-Campos, 2025 WL 2496379, at *8 (quoting Maldonado v. Olsen, No. 25-cv-3142, 2025 WL 237441, at *12 (D. Minn. Aug. 15, 2025)).

Finally, Respondents point to a recent Fifth Circuit opinion which reached an opposite conclusion on these issues. (ECF No. 9 at PageID 31 (citing Buenrostro-Mendez, 166 F.4th 494).) Particularly relevant to Ascanio Bayona's arguments, the Buenrostro-Mendez court found

9

that "seeking admission" is equivalent to being an "applicant for admission." 166 F.4th at 502–06. As a result, the Fifth Circuit held that all those who have crossed the border unlawfully fall under § 1225, not § 1226, and thus are ineligible for bond hearings. Id. at 508.

Buenrostro-Mendez does not bind this Court, and its reasoning is not persuasive here. First, because it conflates the terms "seeking admission" with "applicant for admission," it renders the two phrases redundant. The canon against surplusage, and common sense, dictate that these terms should have different meanings because the statute includes them both in the same provisions and even in the same sentences. See Buenrostro-Mendez, 166 F.4th at 510 (Douglas, J., dissenting) (quoting Scalia & Garner, supra, at 170). Second, the holding in Buenrostro-Mendez makes superfluous the existence of § 1226(c)(1), a part of the Laken Riley Act, which lists certain crimes that render an applicant ineligible for a bond hearing. If a criminal record makes a bond hearing impossible, it makes little sense that all bond hearings for unlawful entrants are impossible. See Buenrostro-Mendez, 166 F.4th at 512 (Douglas, J., dissenting).

Thus, given the plain language of §§ 1225 and 1226, the arrest and detention of an illegal immigrant who has been continuously present in the United States for three years is governed by § 1226(a), and is subject to the discretionary bond process in that provision.

**II.    Due Process**

The Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently)." Lopez-Campos, 2025 WL 2496379, at *9 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)). In the context of civil immigration detention, the Sixth Circuit

applies the balancing test from Mathews v. Eldrige, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen.  See, e.g., United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th Cir. 2020).  Those factors include (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335.

Ascanio Bayona argues that Respondents violated the Due Process Clause of the Fifth Amendment by detaining him without a bond hearing.  (ECF No. 1 at PageID 6.)  Respondents, however, assert that Ascanio Bayona's due process rights were not violated because, without a lawful entry, he should be "'treated' for due process purposes 'as if stopped at the border.'"  (ECF No. 9 at PageID 32 (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020)).)

Here, because § 1226(a) applies to Ascanio Bayona, he is owed the process given to him under that statute.  As for the Mathews factors, (1) Ascanio Bayona has a strong private liberty interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates his risk of flight and danger to the community, and, (3) given Ascanio Bayona's clean criminal record, it will be difficult for the Government to demonstrate an interest in his detention.  Indeed, before he was apprehended, Ascanio Bayona was present in the United States for three years, is married, employed, and awaiting an asylum determination.  (ECF No. 1-3 at PageID 13.)  These facts indicate his ties to the United States, his desire to remain, and his expectation that he would remain free from government custody.

As a result, his detention without bond violated his liberty interest, which cannot be casually tossed aside.  Thus, Ascanio Bayona is entitled to immediate release.  See Villafranca

11

Lara v. Ladwig, No. 26-CV-02079-SHL-tmp, 2026 WL 401204, at *10 (W.D. Tenn. Feb. 12, 2026) ("Because ICE purported to detain [petitioner] under § 1225(b)(2)(A), which includes no provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a)."). Accordingly, his detention under the mandatory detention framework of § 1225(b)(2)(A) violates his due process rights.  Thus, consistent with the Court's decision in Godinez-Lopez, and after consideration of the record, Ascanio Bayona's petition is **GRANTED**.[3]

## CONCLUSION

For the reasons stated above, the Petition is **GRANTED**.  Respondents are ordered to release Ascanio Bayona immediately.  Respondents are **ENJOINED** from pursuing Ascanio Bayona's detention under 8 U.S.C. § 1225(b)(2)(A).  Respondents are further **ORDERED** to file a Status Report with this Court on or before March 13, 2026, to certify compliance with this Order.

**IT IS SO ORDERED,** this 9th day of March, 2026.

>  s/ Sheryl H. Lipman
>  SHERYL H. LIPMAN
>  CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Because the Petition is granted on other grounds, the Court need not reach the questions of whether Ascanio Bayona's detention violated the Fourth or Eighth Amendments.